Nos. 21-6028

---

## UNITED STATES COURT OF APPEALS
## for the SIXTH CIRCUIT

---

PLEASANT VIEW BAPTIST CHURCH, *et al.*,

*Plaintiffs-Appellants*

v.

ANDY BESHEAR, in his individual capacity as
GOVERNOR OF THE COMMONWEALTH OF KENTUCKY,

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
No. 2:20-cv-00166-GFVT

---

### BRIEF OF GOVERNOR ANDY BESHEAR

---

Travis Mayo
Taylor Payne
Office of the Governor
700 Capitol Ave.
Frankfort, KY 40601
502-564-2611
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov

*Counsel for Governor Andy Beshear*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….. iii

STATEMENT CONCERNING ORAL ARGUMENT………………………..vii

STATEMENT OF THE CASE……………………………………………1

SUMMARY OF THE ARGUMENT………………………………………...5

ARGUMENT………………………………………………………………...5

    I.    Executive Order 2020-969 Did Not Violate A Clearly Established Right Under The Free Exercise Clause…………..…………………6

    II.    Executive Order 2020-969 Did Not Violate A Clearly Established Right To Private Education………………………………………... 15

    III.    Executive Order 2020-969 Did Not Violate The Right To Peacefully Assemble or Associate…………………………………………...17

CONCLUSION………………………………………………………...18

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)……………..……..……6, 8, 9

*Andino v. Middleton,* 141 S.C.t 9 (2020) (Mem)……………………………………...8

*Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 853 (6th Cir. 2012)……………...6

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)…………..………..……………….9

*Benner v. Wolf*, 2021 WL 4123973,at *5 (M.D. Penn. Sept. 9, 2021)…………..14

*Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016)……………………………..8

*Calvary Chapel Dayton Valley v. Sisolak*, 140 S.Ct. 2603, 2605 (2020)…………12

*Case v. Ivey*, --- F. Supp. 3d ----, 2021 WL 2210589, at *25–26
(M.D. Ala. June 1, 2021)……………………………………………………………..14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523
(1993)………………………………………………………………………………….7

*Commonwealth v. Beshear*, 981 F.3d 505, 509, 510, 653, 656 (6th Cir.
2020)…..............................................................................................................passim

*Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021)……………………………...6

*Danville Christian Academy v. Beshear*, 503 F.Supp.3d 516, 521
(E.D. Ky. Nov. 25, 2020)……………………………………………………..…2

*Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990)……………7

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)………………………………...…5

*Hartman v. Acton*, 499 F. Supp. 3d 523, 538 (S.D. Ohio 2020)……………..…14

*Heffron v. Int'l Soc. For Krishna Consciousness*, 452 U.S. 640, 647 (1981)…17-18

*Hughes v. City of N. Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996)…………..……..18

*Kissinger v. Bd. of Trs. of Ohio State Univ.*, 5 F.3d 177, 180 (6th Cir. 1993)……16

*Maryville Baptist Church v. Beshear* (*Maryville II*), 977 F.3d 561 (6th Cir.
2020)……………………………………………………………………………....9, 10

*Maryville Baptist Church, Inc. v. Beshear* (*Maryville I*), 957 F.3d 610……..2, 9, 10

*Monclova Christian Academy v. Toledo-Lucas County Health Department*, 984
F.3d 477 (6th Cir. 2020)………………………………………………………12-13

*Mullenix v. Kuna*, 577 U.S. 7, 12 (2015)………………………………………...…6

*Northland Baptist Church of St. Paul v. Walz*, --- F. Supp. 3d ----, 2021 WL
1195821, at *8 (D. Minn. Mar. 30, 2021)………………………………………...14

*Ohio Ass'n of Ind. Sch. v. Goff*, 92 F.3d 419, 422 (6th Cir. 1996)………………..15

*Ohio Civ. Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1176 (6th Cir. 1988)………9

*Pearson v. Callahan*, 55 U.S. 223, 232 (2009)…………………………………….6

*Pierce v. Society of Sisters*, 268 U.S. 510, 534 (1925)………………….............16

*Pleasant View Baptist Church v. Beshear*, 838 Fed. Appx. 936, 938 (6th Cir. 2020)………………………………………………………………………………..4, 8

*Prater v. City of Burnside, Ky.*, 289 F.3d 417, 430 (6th Cir. 2002)………………16

*Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944)……………………………7

*Resurrection School v. Hertel*, 11 F.4th 437, 457 (6th Cir. 2021)………………..13

*Resurrection School v. Hertel*, 16 F. 4th 1215, 1216 (6th Cir. 2021) (Mem)…….13

*Resurrection School v. Hertel*, 35 F.4th 524 (6th Cir. 2022)………………...…4, 13

*Roberts v. Neace*, 958 F.3d 409, 527-28 (6th Cir. 2020)………………..……2, 9, 10

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984)…………………………..17

*Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020)………………………..11

*South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020)……………………………………………………………………………11, 12

*Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012)…………………………..…….....8, 9, 10

*Ward v. Rock Against Racism*, 491 U.S. 781, 792 (1989)………………………...17

*Watchtower Bible & Tract Soc. of New York, Inc. v. Vill. of Stratton, Ohio*, 240 F.3d 553, 562 (6th Cir. 2001)…………………………………………………...…….16

**Other**

Executive Order 2020-969……………………………..……………………….…passim

## STATEMENT CONCERNING ORAL ARGUMENT

While the Governor stands ready to present oral argument, he respectfully submits that this appeal can be resolved on the briefs.

## STATEMENT OF THE CASE

Plaintiffs-Appellants (hereinafter "Plaintiffs") ask this Court to be the first in the country to deny qualified immunity to a Governor for the issuance of public health measures in response to the COVID-19 pandemic. Specifically, Plaintiffs argue that Governor Andy Beshear violated the United States Constitution by promulgating Executive Order 2020-969, which temporarily halted in-person classes at public and private schools during a significant rise in COVID-19 cases, and should pay compensatory and punitive damages. The District Court dismissed Plaintiffs' claims for monetary relief as barred by the doctrine of qualified immunity.

This Court should affirm the District Court's order because Plaintiffs cannot demonstrate that the order temporarily closing all schools to in-person instruction during the COVID-19 pandemic violated a clearly established constitutional right. Indeed, this Court need not look any further than its decision in *Commonwealth v. Beshear* (hereinafter "*Beshear*"), wherein this Court allowed Executive Order 2020-969 to remain in effect, holding it to be "neutral and of general applicability[.]" 981 F.3d 505, 509 (6th Cir. 2020).

## FACTUAL BACKGROUND

In mid-November 2020, the Commonwealth of Kentucky, along with many other parts of the country, experienced a dramatic surge of COVID-19 cases that

threatened to overwhelm its medical resources. As this Court previously

recognized during this time period:

> [E]lementary and secondary schools pose unique problems for public health officials responding to the COVID-19 pandemic. Compliance with masking and social distancing requirements is difficult to maintain, and students receiving in-person instruction must in any event remove their facial coverings to eat. The Commonwealth is particularly vulnerable to these problems, as it "leads the nation in children living with relatives other than their parents – including grandparents and great-grandparents, who are especially vulnerable to the disease." "Kentuckians also have high rates of comorbidities that can lead to severe cases of COVID-19, including heart and lung conditions."

*Beshear*, 981 F.3d at 508. (internal citations omitted) To protect the public health

during this time, on November 18, 2020, Governor Beshear issued Executive

Order 2020-969, which temporarily halted in-person instruction at all public and

private elementary and secondary schools in the Commonwealth between

November 23, 2020 and January 3, 2021. (Order, Doc. 60, Page ID # 653.)

Danville Christian Academy first challenged Executive Order 2020-969 as

violating the Free Exercise Clause. *Danville Christian Academy v. Beshear*, 503

F.Supp.3d 516, 521 (E.D. Ky. Nov. 25, 2020). The District Court issued a

preliminary injunction – relying on *Maryville Baptist Church, Inc. v. Beshear*, 957

F.3d 610 (6th Cir. 2020), and *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020) –

finding the order likely violated the Free Exercise Clause. *Id.* at 527-28. The

Governor appealed, and this Court stayed the District Court Order, holding that

Executive Order 2020-969 was "neutral and of general applicability" so as not to violate the Free Exercise Clause and that neither *Maryville* nor *Roberts* controlled. *Beshear*, 981 F.3d at 509. [1]

Plaintiffs also challenged Executive Order 2020-969 in the same District Court as violating the Free Exercise Clause, the right to private education, the right to peaceably assemble and the right of association. (Order, RE 60, Page ID # 656.) They sought preliminary and permanent injunctive relief, declaratory relief and compensatory and punitive damages. (*Id*. at 653, 656.) This time, the District Court denied preliminary relief, relying in part on *Beshear* to find that Plaintiffs failed to demonstrate a likelihood of success on the free exercise claim. (Order, RE 24, Page ID # 317.) The Court also found that Plaintiffs were not likely to succeed on the right to a private education claim because that right is about the right to choose whether to send a child to private school, a right not implicated by Executive Order 2020-969. (*Id*. at 317-18.) Finally, the Court held the order was content-neutral, narrowly tailored and provided alternative channels of communication so as to not violate the free peaceful assembly or association clauses. (*Id*. at 318-19.) Plaintiffs

---

[1] The United States Supreme Court declined to re-enjoin the executive order. *Danville Christian Academy, Inc. v. Beshear*, 141 S. Ct. 527 (2020).

appealed, and this Court declined to stay the District Court's Order. *Pleasant View Baptist Church v. Beshear*, 838 Fed.Appx. 936, 938 (6th Cir. 2020).

Thereafter, Governor Beshear moved to dismiss the complaint. (Motion to Dismiss, RE 35, Page ID # 377.) The District Court granted the motion. (Order, RE 60, Page ID # 652-67.) It held Plaintiffs' claims for declaratory and injunctive relief to be moot (*Id*. at 662.) It also held Plaintiffs' claims for compensatory and punitive damages against Governor Beshear in his individual capacity to be barred by the doctrine of qualified immunity. (*Id*. at 662-67.)

Plaintiffs appealed and successfully held this appeal in abeyance until this Court's decision in *Resurrection School v. Hertel*, 35 F.4th 524 (6th Cir. 2022). In *Resurrection*, this Court held to be moot an appeal and underlying claims by a private religious school and two parents of students who attend private religious schools challenging a repealed statewide mask mandate. *Id*. As a result, Plaintiffs do not appeal the District Court's dismissal of their claims for declaratory and injunctive relief. They solely appeal the District Court's dismissal of their claims for monetary relief against Governor Beshear in his individual capacity under the doctrine of qualified immunity.

## SUMMARY OF THE ARGUMENT

The District Court correctly found that Governor Beshear is immune from Plaintiffs' claims. Plaintiffs did not meet their burden to demonstrate that Executive Order 2020-969 violated the Free Exercise Clause, the right to a private education, the freedom to peacefully assemble, the freedom to associate, or any clearly established right to in-person instruction at a religious school in spite of secular public health measures mitigating the spread of COVID-19. This Court should affirm the District Court's Order dismissing Plaintiff's claims for monetary relief against the Governor in his individual capacity.

## ARGUMENT

Plaintiffs fail to meet their burden to demonstrate that the issuance of Executive Order 2020-969 violated a clearly established constitutional right.

Public officials, like the Governor, are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court instructs that courts should review assertions of qualified immunity as to "whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 55 U.S. 223, 232 (2009) (internal parentheses

omitted). "[A] plaintiff bears the burden of overcoming qualified immunity." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). If the plaintiff fails to meet either requirement, the court need not address the other. *Id*.

A "clearly established" right is one in which "'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . . [and] in the light of preexisting law the unlawfulness must be apparent.'" *Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 853 (6th Cir. 2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). For a state actor to lose qualified immunity, preexisting law "must have placed the statutory or constitutional question beyond debate." *Mullenix v. Kuna*, 577 U.S. 7, 12 (2015) (citation omitted).

Plaintiffs fail to meet their burden. Indeed, Plaintiffs do not cite a single instance of a court denying a public official qualified immunity for actions taken to limit the spread of COVID-19. As demonstrated herein, the issuance of Executive Order 2020-969 did not violate a clearly established right under the Free Exercise Clause, the right to a private education, the freedom to peacefully assemble or the freedom to associate.

I.    **Executive Order 2020-969 Did Not Violate A Clearly Established Right Under The Free Exercise Clause.**

While the Free Exercise Clause prohibits the government from passing laws that stifle religious belief or practice, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993), it does not require the government to exempt religious practices from a "valid and neutral law of general applicability," *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990). In other words, "[t]he right to practice religion freely does not include liberty to expose the community ... to communicable disease or ... ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944).

Executive Order 2020-969 did not violate the Free Exercise Clause because it is a neutral public health measure of general applicability. *Beshear*, 981 F.3d at 509. As this Court previously held, "Executive Order 2020-969 applies to all public and private elementary and secondary schools in the Commonwealth, religious or otherwise; it is therefore neutral and of general applicability and need not be justified by a compelling governmental interest." 981 F.3d at 509. *Beshear* precludes a finding that the Governor is not entitled to qualified immunity for the issuance of Executive Order 2020-969.

*Beshear* controls for two reasons. First, it unambiguously establishes that Executive Order 2020-969 did not violate the free exercise clause, and this Court

already refuted Plaintiffs attempt to distinguish this case. *See Pleasant View Baptist Church*, 838 Fed. Appx. at 938 (denying Plaintiffs motion for an injunction pending appeal, finding that "there is no basis in this emergency setting to distinguish [*Beshear*] from today's case."). *See also Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) ("[F]indings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation.") Second, even though Plaintiffs attempt to relitigate the case,[2] *Beshear* still demonstrates that even if Executive Order 2020-969 violated Plaintiffs free exercise right, the right was not clearly established even to this Court, let alone a public official responding with immediacy to an evolving global pandemic. *See Anderson*, 483 U.S. at 640 ("[I]n the light of pre-existing law the unlawfulness must be apparent."). *See also Andino v. Middleton*, 141 S.C.t 9 (2020) (Mem) ("'When those officials 'undertake[] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.''" (Kavanaugh, J. concurrence) (citation omitted).

Seeking to clearly establish a violated right in spite of *Beshear*, Plaintiffs first rely on *Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012), in which this Court

---

[2] For instance, Plaintiffs also argue the ministerial exception in *Our Lady Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, protects a church's autonomy to hold in-person instruction regardless of a neutral secular law. This Court rejected that argument, finding that "[t]he ministerial exception protects a church's autonomy with respect to matters of doctrine and church government, but those are not affected here. *Danville*, 981 F.3d at 510.

reversed the dismissal of a free exercise claim brought by a student who was

expelled from her counseling-degree program by her university for refusing to

counsel a homosexual client in violation of its ethics code. *Id*. at 730. Plaintiffs

point to the Court's statement that "[a]t some point, an exception-ridden policy

takes on the appearance and reality of a system of individualized exemptions, the

antithesis of a neutral and generally applicable policy[.]" (Doc. 20, Page: 22 (citing

*Ward*, 667 F.3d at 740).) But *Ward* states a general rule for courts to observe,

rather than "[t]he contours of the right[.]" *See Anderson*, 483 U.S. at 640 (holding

"[t]he contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right[.]"). The Supreme Court

has admonished courts "not to define clearly established law at a high level of

generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Moreover, this Court

did not decide *Ward* in the context of the COVID-19 pandemic and the

responsiveness it required of public officials. *See Ohio Civ. Serv. Emps. Ass'n v.

Seiter*, 858 F.2d 1171, 1176 (6th Cir. 1988) ("[T]here must be limitations upon the

extent to which a court may rely on holdings in contexts other than the one being

considered to demonstrate that a principle has been clearly established.").

Next, seeking to relitigate *Beshear*, Plaintiffs ask this Court to consider cases

it already held distinguishable and not applicable to Executive Order 2020-969,

namely: *Maryville* (*Maryville I*), 957 F.3d 610; *Roberts*, 958 F.3d 409; and

*Maryville Baptist Church v. Beshear* (*Maryville II*), 977 F.3d 561 (6th Cir. 2020).

*See Beshear*, 981 F.3d at 509 (holding neither *Maryville I* nor *Roberts* controlled

because they applied only to houses of worship, rather than schools.) *Maryville I*

and *Roberts* – largely incorporating the same language as *Maryville I* – each

address an order that prohibited mass gatherings, including those at faith-based

organizations, during the early days of the COVID-19 pandemic. They also restate

the general rule expressed in *Ward* that discriminatory laws may come in the form

of "general bans that cover religious activity when there are exceptions for

comparable secular activities." *Maryville I*, 957 F.3d at 614 (citing *Ward*, 667 F.3d

at 738). *See also Roberts*, 958 F.3d at 413 (citing *Ward*, 667 F.3d at 738).

*Maryville II* does not even address the merits of a free exercise claim as to the

mass gatherings order; instead, it addresses whether the appeals and underlying

claims were moot. 977 F.3d at 564-66.

Though this Court – in *Maryville I* and *Roberts* – applied the *Ward* rule to

find the mass gatherings order unlawfully permitted comparable secular activities,

such as gatherings in grocery stores, laundromats and office settings, in *Beshear*

the Court found that "[n]o such comparable exceptions apply to Executive Order

2020-969." 981 F.3d 509. And although Executive Order 2020-969 did not

temporarily halt operations at grocery stores, "religious schools are in the category

of 'K-12 schools' because the reasons for suspending in-person instruction apply precisely the same to them." *Id*. at 510.

Moreover, *Maryville I* and *Roberts* established comparisons for churches, but not for schools. Yet, even for churches, other courts disagreed as to the appropriate comparisons. *See South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (denying injunctive relief to plaintiffs challenging a COVID-19 crowd-limits order as it applied to church gatherings).[3] In *South Bay*, Justice Roberts wrote in concurrence:

---

[3] *South Bay* was issued after this Court's orders in *Maryville I* and *Roberts*. *Id*. It remained as the foremost guidance from the Supreme Court on the issue of public health measures impacting faith-based organizations at the time Governor Beshear issued Executive Order 2020-969. The Supreme Court did not signal a change in course until November 25, 2020 with the issuance of *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020).

Plaintiffs attempt to rely on *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020), which was decided **after** issuance of Executive Order 2020-969. As the District Court noted, "Opinions issued after the issuance of the executive order cannot be relied upon as 'clearly established' if they did not exist at the time the executive order was implemented." (Order, RE 60, Page ID #: 664, n. 8. (citing *In re New York City Policing During Summer 2020 Demonstrations*, --- F. Supp. 3d ----, 2021 WL 2894764, at *19 (S.D.N.Y. July 9, 2021).) Plaintiffs also suggest that *Cuomo* should have foreclosed qualified immunity from November 26, 2020 onward, but cite no authority for the proposition that qualified immunity once held can be lost after the issuance of an executive order. Regardless, a District Court preliminarily enjoined Executive Order 2020-969 on November 25, 2020, *see Danville Christian Academy, Inc. v. Beshear*, 503 F. Supp. 3d 516 (E.D. Ky. Nov. 25, 2020), so it was not in effect on November 26, 2020. It only resumed upon this Court's stay of the District Court's order in *Beshear*, 981 F.3d 505, on November 29, 2020, which distinguished *Cuomo* from the facts here. 981 F.3d at 509.

> Similar or more severe restrictions apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time. And the Order exempts or treats more leniently only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods.

*Id*. (Roberts, C.J., concurrence). He further rejected "[t]he notion that it is 'indisputably clear' that the Government's limitations are unconstitutional" – even calling the idea "quite improbable." *Id*. at 1614 (Roberts, C.J., concurrence). Such different views highlight the dynamic and fact-intensive issues public officials faced when setting forth public health measures during the early days of the COVID-19 pandemic. *Id*. at 1613 (Roberts, C.J., concurrence). *See also Calvary Chapel Dayton Valley v. Sisolak*, 140 S.Ct. 2603, 2605 (2020) (Mem) ("In times of crisis, public officials must respond quickly and decisively to evolving and uncertain situations. At the dawn of an emergency—and the opening days of the COVID–19 outbreak plainly qualify—public officials may not be able to craft precisely tailored rules. Time, information, and expertise may be in short supply, and those responsible for enforcement may lack the resources needed to administer rules that draw fine distinctions.") (Alito, J. dissent).

Continuing to re-litigate *Beshear*, Plaintiffs argue it was an aberration, deviating from *Maryville I* and *Roberts*, and distinguished in *Monclova Christian*

*Academy v. Toledo-Lucas County Health Department*, 984 F.3d 477 (6th Cir.

2020). But, as the District Court noted, "if anything, subsequent disagreement

within the Sixth Circuit as to the constitutionality of various orders relating to

school closures and school mask mandates weighs in favor of a finding that

Governor Beshear did not violate any clearly established law when he promulgated

Executive Order 2020-969." (Order, RE 60, Page ID # 664-65.) Indeed, in the now

vacated opinion, *see Resurrection School v. Hertel*, 16 F. 4th 1215, 1216 (6th Cir.

2021) (Mem), this Court held "*Monclova Christian Academy's* interpretation of

*Beshear* is incorrect." *Resurrection School v. Hertel*, 11 F.4th 437, 457 (6th Cir.

2021).[4]

Plaintiffs additionally and confusingly argue *Beshear* does not control since

it did not exist at the time of the Governor's actions and could not have weighed

into his analysis. But, obviously, the point of *Beshear* is not that the Governor

considered it before issuing Executive Order 2020-969. Rather, it shows that the

Governor's actions have already been evaluated by this Court and found not to

violate the Constitution, or at least not in such an apparent manner so as to deprive

him of qualified immunity.

---

[4] As stated earlier, upon rehearing en banc, the Sixth Circuit dismissed the appeal
and underlying claims as moot. *Resurrection School*, 35 F.4th 524, 524.

As the District Court acknowledged, courts have overwhelmingly recognized the unprecedented context presented by COVID-19 and extended qualified immunity to state officials responding to the public health emergency. (RE 60, Page ID # 666 (citing *Benner v. Wolf*, 2021 WL 4123973, at *5 (M.D. Penn. Sept. 9, 2021) (finding Governor Thomas W. Wolf entitled to qualified immunity in his individual capacity on a motion to dismiss in litigation pertaining to his issuance of a Proclamation of Disaster Emergency and subsequent business and school closure orders in light of the Covid-19 pandemic); *Case v. Ivey*, --- F. Supp. 3d ----, 2021 WL 2210589, at *25–26(M.D. Ala. June 1, 2021) (granting qualified immunity to Governor Kay Ivey in her individual capacity in the motion to dismiss context following litigation pertaining to her proclamation of a national emergency and subsequent orders intended to combat Covid-19); *Northland Baptist Church of St. Paul v. Walz*, --- F. Supp. 3d ----, 2021 WL 1195821, at *8 (D. Minn. Mar. 30, 2021) (granting qualified immunity in the motion to dismiss context to Governor Tim Walz in his individual capacity following the issuance of executive orders in response to Covid-19); *Hartman v. Acton*, 499 F. Supp. 3d 523, 538 (S.D. Ohio 2020) (granting qualified immunity to Ohio Department of Health director in her individual capacity in the motion to dismiss context following issuance of stay at home order in response to the Covid-19 pandemic). While Plaintiffs seek to distinguish these cases, the District Court did not rely on them as

controlling authority, but to note a recognition by courts that COVID-19 thrust

public officials into unprecedented circumstances that required them to act with

immediacy in legally questionable environments. Conversely, Plaintiffs do not cite

a single case of a court declining to extend a public official qualified immunity for

actions taken in response to COVID-19.

      For all of these reasons, Plaintiffs fail to meet their burden. Executive Order

2020-969 does not violate a clearly established right under the Free Exercise

Clause.

## II.   Executive Order 2020-969 Did Not Violate A Clearly Established Right To Private Education.

      The District Court correctly held that the Governor is immune from

Plaintiffs' claim that he violated the right to a private education. The right to

private education provides that "'parents have a constitutional right to send their

children to private schools and a constitutional right to select private schools that

offer specialized instruction.'" (Order, RE 60, Page ID # 665 (quoting *Ohio Ass'n*

*of Ind. Sch. v. Goff*, 92 F.3d 419, 422 (6th Cir. 1996).) Executive Order 2020-969

did not implicate the right to a private education because it only temporarily halted

in-person instruction at all K-12 schools in the Commonwealth. It did not interfere

with a parent's right to send their children to a private school.

Plaintiffs do not dispute this, but claim – without citing any relevant case law – that the right to a private education must also prohibit the State from regulating their private education during a pandemic. They rely on *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), which held that a state law requiring children to attend public school violated the Fourteenth Amendment by interfering with the liberty of parents and guardians to direct the education of children under their control. *Id*. at 534. *Pierce* does not address any facts similar to the facts at issue here. Nor does *Pierce* clearly establish a right to in-person school instruction protected from secular laws applicable to every school in the Commonwealth.

Additionally, Plaintiffs argue the District Court erred because where a right to private education claim is coupled with a free exercise challenge, strict scrutiny applies. But this Court has already rejected that theory. *See Kissinger v. Bd. of Trs. of Ohio State Univ.*, 5 F.3d 177, 180 (6th Cir. 1993). *See also Prater v. City of Burnside, Ky.*, 289 F.3d 417, 430 (6th Cir. 2002); *Watchtower Bible & Tract Soc. of New York, Inc. v. Vill. of Stratton, Ohio*, 240 F.3d 553, 562 (6th Cir. 2001), *rev'd on other grounds*, 536 U.S. 150 (2002). Given that precedent, as well as this Court's decisions in *Beshear*, Plaintiffs cannot demonstrate a violation of a clearly established right to a private education.

**III.    Executive Order 2020-969 Did Not Violate The Right To Peacefully Assemble or Associate.**

The District Court correctly held that Governor Beshear is immune from Plaintiffs' free assembly and association claims because Executive Order 2020-969 was a content-neutral and narrowly tailored public health measure promulgated for the sole reason of slowing the spread of COVID-19. (Order, RE 60, Page ID # 665-66.) Indeed, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 792 (1989). Moreover, as the District Court noted, Executive Order 2020-969 was of a short duration and permitted online instruction. (Order, RE 24, Page ID # 319.)

Plaintiffs point to *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), which identified two forms of associational rights: freedom of intimate association and freedom of expressive association, including the exercise of religious practices. As Plaintiffs note, *Roberts* also recognized that intimate association includes close personal relationships because they attend the raising and education of children. However, *Roberts* has no bearing on the case at hand. While the right to assemble or associate may include the right to in-person instruction at religious schools, the State may regulate in-person instruction through content-neutral laws even if those laws incidentally restrict in-person instruction. *See Heffron v. Int'l*

*Soc. For Krishna Consciousness*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.").

Moreover, Plaintiffs reliance on *Roberts* fails to demonstrate a clearly established right at issue here. *Roberts* articulates a general statement that the intimate association needed to raise and educate children is protected by the First Amendment. *See Hughes v. City of N. Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996) ("[A] plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it."). No correlation exists between the issuance of Executive Order 2020-969 and the abstract statement of law Plaintiffs cite in *Roberts*. Thus, while a right to intimate association exists, the right does not prohibit a content-neutral public health order or clearly establish that a public health measure closing all schools to in-person instruction would violate that right.

## CONCLUSION

This Court should affirm the District Court's Order dismissing Plaintiffs' claims for monetary relief against the Governor in his individual capacity because the District Court correctly found that Governor Beshear is immune from Plaintiffs' claims. The issuance of Executive Order 2020-969 did not violate the Free Exercise Clause, the right to a private education, the freedom to peacefully assemble or the freedom to associate, let alone a clearly established right to in-

person instruction at a religious school protected from secular public health

measures mitigating the spread of COVID-19.

/s/Taylor Payne
Travis Mayo
General Counsel
Taylor Payne
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov

*Counsel for Governor Andy Beshear*

CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32 and the type-volume limitation because it contains 4,302 words and uses proportionally spaced typeface of Times New Roman in 14 point.

/s/ Taylor Payne
Taylor Payne

CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2022, I electronically filed the foregoing Response via the Court's CM/ECF system, causing all counsel of record to be served.

/s/ Taylor Payne
Taylor Payne

ADDENDUM

| RE # | Document | Page ID # |
|------|----------|-----------|
| 24 | Order | 308-326 |
| 35 | Motion to Dismiss | 377-378 |
| 60 | Order | 652-667 |
| | | |
| | | |
| | | |
| | | |
| | | |